IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| COINFINITY, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. |
| | ) | |
| SUPPLYBIT, LLC | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |

## COMPLAINT AT LAW

NOW COMES the plaintiff, Coinfinity, LLC, by and through its counsel Gary Zhao, of Amundsen Davis LLC, and for its Complaint at Law against the defendant Supplybit, LLC (hereinafter "Supplybit"), the plaintiff states as follows:

### Nature of the Case

1. The plaintiff brings this action for breach of contract against the defendant Supplybit due to Supplybit's total suspension of its cyrpto mining services to the plaintiff under three separate agreements. The suspension is without any justification and amounts to material breaches of the said agreements.

2. The defendant Supplybit also engaged in deceptive business practice by misleading the plaintiff regarding the reason behind the suspension of their services, attempting to trigger a force majeure provision to excuse itself from nonperformance, attempting to gain the plaintiff' reliance by making misleading statements about its ability to carry out the mining services under the contract, requesting payment of baseless fees in order to resuming mining services, thereby causing the plaintiff to sustain damages. The plaintiff is

entitled to recover damages and attorneys' fees under the Illinois consumer Fraud and Deceptive Business Practice Act. 815 ILCS 505/1 et seq.

3. This is also an action for declaratory judgment pursuant to the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201–2202, and Rule 57 of the Federal Rules of Civil Procedure. The plaintiff seeks a declaratory judgment that any agreement between the plaintiffs and Supplybit (collectively hereinafter the "Parties") terminated on June 15, 2023 as Illinois law permits a nonbreaching party to terminate such contract due to material breach.

## The Parties

4. Coinfinity (hereinafter "Coinfinity" or "the plaintiff") is a limited liability company organized under the laws of Wyoming. Shawn Keller is the CEO of Coinfinity.

5. Defendant Supplybit, LLC is a Delaware limited liability company, with its principal place of business located in San Juan, Puerto Rico. Supplybit advertises itself as an owner and operator of cryptocurrency miners and provides cryptocurrency mining services to its customers. Supplybit advertised itself as a company that provides "100% Uptime" mining services and its customers would "never experience lost mining revenue due to downtime."

## Jurisdiction and Venue

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, cost and attorneys' fees, and is an action between citizens of different states.

7. An actual controversy exists between the Parties within the meaning of 28 U.S.C. § 2202, which is of sufficient immediacy and reality to warrant declaratory relief.

8. Venue of this action is proper in this Court pursuant to 28 U.S.C. § 1391 because the causes of action accrued in this jurisdiction and a substantial part of the events or omissions giving rise to the claim occurred in this district. The contracts in question were negotiated and entered into in part in Chicago, Illinois. Defendant Supplybit also conducted business in Chicago, Illinois.

9. Under section 9.06 of the parties' agreement, it is specifically stated that client to each contract "irrevocably submits to the exclusive jurisdiction of any state or federal court sitting in Chicago, Illinois, over any suit, action, or proceeding arising out of or relating to this Agreement." Exhibits A, B, and C at 9.06.

10. The agreements in question also requires all notices to be directed to Michael Groff with a Chicago, Illinois address. Exhibit A, B, and C at 9.05

## Coinfinity's Three Contracts with Supplybit

11. Coinfinity entered into three separate mining services contracts with Supplybit in 2021. These separate contracts are dated August 21, 2021 (Exhibit A); September 15, 2021 (Exhibit B); and October 26, 2021 (Exhibit C).

12. The purpose of the agreements shows that Coinfinity desired to engage in cyroptocurrency mining and to purchase the capacity to mine cryptocurrencies from Supplybit and to engage Supplybit to operate such miners, also known as mining rigs as may be necessary to accomplish such purpose.

13. In all contracts, Supplybit represented to the plaintiff that it has access to miners and experience operating the same or similar devices and desires to provide the plaintiff with mining services for appropriate payment.

14. For the August 21, 2021 contract, the plaintiff paid a purchase price of $399,500.00 to Supplybit. For the September 15, 2021 contract, the plaintiff paid a purchase price of $109,900.00. For the October 26, 21 contract, the plaintiff paid a purchase price of $303,600.00.

15. Each contract also had a different Delivery Deadline (section 1.17) and Deployment Date (section 1.18). Deployment Date is defined as earlier of (a) Delivery Deadline and (b) the first date on which the Owed Mining Power equals zero. Section 1.18 in Exhibits A, B, and C.

16. The plaintiff also made monthly service fee payments under its three agreements with Supplybit.

17. Under these agreements, Supplybit would provide a monthly mining report to the plaintiff showing, among other things, coins mined, theoretical proceeds, operation expenses, and theoretical profits under each agreement.

18. The report also includes a "monthly mine performance" section showing among other things, daily client hash, bitcoin earned, actual client hash rate, actual bitcoin earned.

19. The language in these contracts makes it difficult for the contracts to terminate the contracts due to Supplybit's failure to perform its services. The contract contains the following expiration provision "the term shall expire on the later date of (i) the third anniversary of the Deployment Data and (ii) the latest Expiration Data assigned to any current or former Active Trade-In, Miner, unless terminated early pursuant to other provisions of this Section 5.01." Exhibit A, B, C at 5.01.

**Supplybit's Early Performance Issues and Contract Amendments**

20. Supplybit experienced significant performance issues under all three Coinfinity contracts. Specifically, it was not able to meet the delivery deadlines and/or deployment dates specified under the individual contracts.

21. For example, Supplybit notified the plaintiff on December 1, 2021 that "Due to supply chain constraints within the cryptocurrency mining industry, specifically electrical infrastructure, we want to reach out regarding your November 30th mine launch and personally let you know your launch will be delayed." Exhibit D. This exchange was specifically related to the August 21, 2021 contract. When this contract did finally go live, there was still no available hash power.

22. Supplybit convinced the plaintiff by falsely claiming that despite this set back, it will continue to perform and be able to meet the long term goals of the plaintiff under all of the contracts. Supplybit wrote in its email to the plaintiff that "At Supplybit, we pride ourselves on the fact that we have made 100% of our deliveries **on time**, as well as being as fully transparent as possible with our clients." Exhibit D. And Supplybit anticipated that the November 30, 2021 deployments to be back online in next 30 days. Exhibit D.

23. Despite this representation, Supplybit did not make 100% of its deliveries on time for the Coinfinity contracts.

24. In April 2022, Shawn Keller of Coinfinity contacted Kevin Kiss, Chief Marketing Officer of Supplybit, complaining of significant drop of hash power in Supplybit's mining operation.

25. The hash rate under the Coinfinity contracts would drop significantly towards the end of each month, and it would last through the payout of the monthly true-ups. This rate

drop became a fairly regular occurrence. This hash rate issue is also reflected in the monthly mining reports supplied by Supplybit.

26. Keller conveyed to Kiss about his concerns about the operational cause of the drop in hash power. He further inquired when the Confinity contracts will be fully online. Exhibit E.

27. Kiss replied to Keller by telling him not to worry about the hash rate performance issues: "Over the course of the next few months, we expect to have our own infrastructure and rack space coming online in droves in Ohio and are happy to report hash power numbers will be trending upwards with these locations coming online. At Supplybit we are proud to be able to sustain these situations and honor the contractual true-ups each month, so I appreciate your patience as we work through everything on our end to get you up to your expected levels." Exhibit E.

28. To address Coinfinity's concerns, Supplybit's CEO Michael Groff wrote to Keller on or about July 11, 2022: "I would expect your hash power to start ramping up any day now." Exhibit F.

29. Keller learned in his communications, prior to entering into the Supplybit contracts, with Groff that with full hash, Supplybit's customers had the potential to mine more than usual and any overages could be kept by the customer. And if for any reason, the customer did not mine the expected amount, Supplybit would pay a true-up at the end of the month to make the customer whole.

30. However, despite these assurances, Supplybit was never able to achieve the hash power promised under the Coinfinity contracts. Supplybit never paid Coinfinity the true-ups to make up for the hash power loss.

31. Frustrated, on or about August 18, 2022, Keller again wrote to Kiss asking when the contracts will be at full hash. Exhibit G. Kiss replied to this message by indicating that the full hash is expected "within next 2 to 3 weeks". Exhibit G. Despite this promise, Supplybit never achieved the full hash rate at the time frame specified by Kiss or at a later time.

32. Instead of terminating the agreements and offer a refund of the plaintiff's purchase prices, Supplybit offered the plaintiff to enter into contract extensions or "pause and extend" agreements.

33. Relying on these representations of the long term ability to substantially perform under the contract, specifically, its repeated representations that Supplybit would achieve full hash rate for the Coinfinity contracts, the plaintiff reluctantly agreed to these pause and extend agreements.

34. For the contract originally dated on August 21, 2021, there were two amendments executed by the parties. First, because Supplybit could not meet the initial delivery deadline, the parties entered into an "Amendment to Mining Services Agreement" on or about December 27, 2021, where the delivery deadline for the August 21, 2021 contract was amended to January 15, 2022. Exhibit H. The original delivery deadline was November 30, 2021. Section 1.17 of Exhibit A. Supplybit missed this target by a lot. The circumstances causing the delay were all under Supplybit's control.

35. Also, the December 27, 2021 amendment extended the expiration date of the August 21, 2021 to "forty and one-half (40.5) months following the Deployment Date ****." Exhibit H.

7

36. Next, the parties entered into an Extended Mining Services Agreement on December 15, 2022 (hereinafter "Extended Agreement(s)"). Under the December 15, 2022 Extended Agreement, the parties agreed to pause the August 21, 2021 contract from December 15, 2022 to June 15, 2023, a period of six months. Exhibit I.

37. The same Extended Agreements were signed for the two remaining contracts. For the contracts originally dated on September 15, 2021, the parties agreed to pause this contract from December 15, 2022 to June 15, 2023. Exhibit J.

38. For the contracts originally dated on October 26, 2021, the parties also agreed to pause this contract from December 15, 2022 to June 15, 2023. Exhibit K.

39. For all three Extended Agreements, Exhibits I, J, and K, Supplybit agreed that the plaintiff shall incur no Running Costs or any other costs, tariffs, taxes, or the like, nor receive any Mining Proceeds. Further, each contract would be extended another 12 months after the initial expiration period of each contract.

### Alleged "Force Majeure Event"

40. On or about March 27, 2023, via email, Supplybit announced to the plaintiff an alleged "force majeure" event involving Silicon Valley Bank and suspended all mining services to its customers.

Specifically, the March 27, 2023 Supplybit email states:

> Due to the recent developments in the Cryptocurrency space and governmental actions, we are uncertain about our future relationship with our $USD banking partner. The closure of Signature Bank and the temporary pressure that regulators are applying to cryptocurrency businesses has created enough uncertainty that we cannot operate our mining contracts with the confidence required to do so according to our standards. More specifically, the FDIC seized Signature Bank on March 13, 2023 after it "failed to provide reliable

8

and consistent data, creating a significant crisis of confidence in the bank's leadership."

While the FDIC has confirmed that all deposits would be guaranteed, Supplybit is still choosing to proactively minimize the Company's exposure to the bank due to material concerns as well as recent reports that Signature Bank's customers involved in the cryptocurrency space, such as Supplybit, will no longer be able to transact with the bank. This is a material risk and endangers Supplybit's ability to effectively service our Mining Services Agreements (MSA).

To clarify the impact to Supplybit, we would no longer have a $USD banking partner to assist in accepting and making payments to customers and vendors. Over the coming days and weeks, we will be seeking alternative banking options to support our business operations. However, at this point in time, all of crypto's major allies in the banking world (i.e., Silvergate Bank, Silicon Valley Bank, and Signature Bank) have been seized by governmental regulators. Exhibit L.

Section 1.21 of the original Coinfinity agreements specifically states:

**Section 1.21 <u>Force Majeure Event</u>**: The term "<u>Force Majeure Event</u>" shall mean any fire, strike, embargo, explosion, power failure, flood, lightning, war, water, electrical storm, labor dispute, civil disturbance, governmental requirement, act of civil or military authority, act of God, act of public enemies, or other cause beyond Supplybit's reasonable control, whether or not similar to the foregoing, that prevents or significantly impedes Supplybit's performance of its obligations under this Agreement.

41. The failure of the bank certainly did not meet any of the defined events under Section 1.21 of all of the Coinfinity agreements. The series of emails sent by Supplybit triggering the force majeure provision of the agreements and leading the suspension of services are nothing but misrepresentations, purely designed to hide the real reasons behind the suspension of services and to keep the plaintiff in its contracts and to gain its reliance.

42. Any government control over the bank is not a requirement on Supplybit's ability to carry out its mining services. The bank's failure does not impact Supplybit's access

to miners and its experience in operating those miners as promised under the separate agreements with the plaintiff.

43. Most importantly, banking relationships is not a cause beyond Supplybit's reasonable control as defined under section 1.21 of the Agreements. Supplybit in emails to its customers, even admitted that it did not bank with Silicon Valley Bank.

44. However, Supplybit's email communications to the plaintiff regarding the force majeure event did not provide the plaintiff with ability to terminate the contract. Supplybit wants its customers, including Coinfinity, to rely on its misrepresentations about the force majeure event and maintain the contractual relationships.

45. At this time, Coinfinity's three contracts were already being paused due to Supplybit's previous failure to perform. The pause would be lifted on or about June 15, 2023 according to the Extended Agreements.

46. Even after the pause periods had ended in mid-June 2023, the suspension of services by Supplybit allegedly due to the force majeure event continued as Supplybit attempted to provide more excuses for further delays. So the pause of Coinfinity's contracts continued past this June 15 deadline without any justification.

47. In early July 2023, Supplybit contacted the plaintiff indicating that in order to resume mining services for its contracts, possibly in mid-July 2023, the plaintiff must sign a new amendment and pay an additional fee.

48. Such amendment and fee are not required under any existing contracts between the plaintiff and Supplybit. This request was made without justification and was really an attempt for Supplybit to further lock its customers into a never ending relationship with Supplybit.

49. Had Coinfinity been told, prior to signing any agreements with Supplybit, that it had to pay fees and sign additional extensions in order to its mining services back on track, suspension of which was totally and completely Supplybit's fault, Confinity would have never signed such agreements in the first place.

50. Shawn Keller of Coinfinity immediately told Supplybit that he would not sign any additional extensions or amendments; and he would not pay any additional fees to reactivate his services as such request was without legal justification and without any basis in the parties' contract. He wanted to be out of these contracts.

51. Supplybit cannot fully perform, yet it comes up with multiple excuses for its failure to perform, but refuses to let the plaintiff out of the contracts.

52. During the period of the suspension, the plaintiff lost opportunities to earn bitcoins, proceeds, and profits promised under each agreement under the terms of the contracts. In addition, any extension of the Coinfinity contracts moves mining activities to the end of the contract, after the upcoming halving event, which will cut the bitcoin proceeds from mining in half. These damages are not speculative but were promised under each contract in question; and Supplybit had previously provided detailed monthly reports to the plaintiff on bitcoins earned, proceeds generated and potential profits.

53. Unable to leave the lengthy mining services agreements with Supplybit, the plaintiff is unable to invest in other cryptocurrency mining opportunities to earn bitcoins, generate profits and proceeds associated with cryptocurrency.

**Southeast Ohio Water Issue**

54. Supplybit's non-performance continued after June 2023.

55. On or about August 5, 2023, Supplybit notified the plaintiff that its mining services needs to be halted due to a water quality issue for the water that provides cooling to some immersion containers.

56. The August 5, 2023 email from Supplybit, is titled: "Important Notice: Mining **Operations Halted**". It states the following, in part:

> In the last 24 hours, we were notified by our partners at our 50MW Immersion mining site in Southeast Ohio that there is a significant issue regarding the water quality that provides cooling to the immersion containers. Our hosting provider has been advised by the manufacturer of the immersion containers that all current mining operations at the site should be shut down. **This is devastating news to all of us and is going to impact us severely and negatively for the near term until our hosting partner can address the water quality issue.**
>
> ****
>
> We will be working non-stop and together with the container manufacturer, hosting provider, and repair parties to develop immediate solutions, alternative mining sites, etc., but this is a significant blow to both Supplybit and Supplybit Clients.
>
> We will provide updates and clarity as soon as they become available, but at this point in time, we do not know when normal operations will resume as we work together more information. Exhibit M.

57. On or about August 31, 2023, Supplybit provided an update to the plaintiff regarding this water incident. The title of the email still states that "Important Notice: Mining Operations **Halted**." The email states in part "At this time, we do not have a definitive timeline for when we will be returning to mining operations and will continue to provide all relevant information to you as we receive it." Exhibit N.

58. Shawn Keller had a Microsoft Teams call with Michael Groff regarding the Ohio incident and continued suspension of services. Mr. Groff admitted to Keller that Supplybit has breached the contract as a result of the latest suspension of service. But it has

12

no intention of allowing Coinfinity to terminate and obtain a refund of the purchase price under the three agreements.

59. Keller was told by Groff that contract extension and amendments are the only options for Coinfinity and other Supplybit's customers in response to the latest suspension. In other words, there is no way out of these contracts.

60. To date, the plaintiff's mining services under the contract remain suspended.

61. Despite delays and suspensions, Supplybit continued to offer cryptocurrency mining services, at least as of June 2023, to potential customers on its website. Several screenshots of such offer of mining services from June 2023 are attached hereto as Exhibit O. On its website, Supplybit makes no mention of delays, suspensions and its inability to provide cryptomining services.

62. Specifically, under a page titled "Supplybit Advantages"[1], at least as of June 2023, Supplybit promises its customers "100% Uptime." The description goes on to say "never experience lost mining revenue due to downtime." Exhibit O at p. 3.

63. Further, its website or marketing materials do not warn potential customers of multiple delays and suspensions, and that each customer, in order to resume service after each Supplybit failure, must sign an extension and pay an additional fee.

## Count I

### Breach of Contract—August 21, 2021 Contract

64. The plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

---

[1] https://supplybit.io/. It should be noted that Supplybit's website is down of September 1, 2023.

65. The plaintiff entered into a mining services agreement with defendant dated on August 21, 2021. Exhibit A. Plaintiff also executed an Amendment and Extended Agreement in connection to this contract. Exhibits H & I.

66. The plaintiff has performed all of its duties under that contract until June 15, 2023 or when his service was suspended again due to the alleged force majeure event.

67. Supplybit has failed to perform under this contract and continues to suspend all services under this contract.

68. There are no defenses or justifications available to Supplybit that would justify nonperformance of its duties.

69. Supplybit's failure to meet the delivery date, deployment date, offer full hash power, pay true-ups, having at least two total suspensions of service without any justification, demands of additional payment and execution of an extension before resuming service, amount to a material breach of the parties' agreement.

70. A result of the foregoing breaches, the plaintiff sustained damages in amounts to be proven at trial.

**Count II**
**Breach of Contract—September 15, 2021 Contract**

71. The plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

72. The plaintiff entered into a mining services agreement with defendant dated on September 15, 2021. Exhibit B. The plaintiff also executed an Extended Agreement in connection with this contract. Exhibit J

73. The plaintiff has performed all of its duties under that contract until June 15, 2023 or when his service was suspended again due to the alleged force majeure event.

74. Supplybit has failed to perform under this contract and continues to suspend all services under this contract.

75. There are no defenses or justifications available to Supplybit that would justify nonperformance of its duties.

76. Supplybit's failure to meet the delivery date, deployment date, offer full has power, pay true-ups, having at least two total suspensions of service without any justification, demands of additional payment and execution of an extension before resuming service, amount to a material breach of the parties' agreement.

77. A result of the foregoing breaches, the plaintiff sustained damages in amounts to be proven at trial.

## Count III
### Breach of Contract—October 26, 2021 Contract

78. The plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

79. The plaintiff entered into a mining services agreement with defendant dated on October 26, 2021. Exhibit C. The plaintiff also executed an Extended Agreement in connection with this contract. Exhibit K.

80. The plaintiff has performed all of its duties under that contract until June 15, 2023 or when his service was suspended again due to the alleged force majeure event.

81. Supplybit has failed to perform under this contract and continues to suspend all services under this contract.

82. There are no defenses or justifications available to Supplybit that would justify nonperformance of its duties.

83. Supplybit's failure to meet the delivery date, deployment date, offer full has power, pay true-ups, having at least two total suspensions of service without any justification, demands of additional payment and execution of an extension before resuming service, amount to a material breach of the parties' agreement.

84. A result of the foregoing breaches, the plaintiff sustained damages in amounts to be proven at trial.

## Count IV
### Declaratory Judgment Termination of All Three Contracts

85. The plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

86. This claim is brought pursuant to 28 U.S.C. § 2201, and Fed. R. Civ. P. 57, seeking a declaration from this court of the parties' rights and liabilities pertaining to the Coinfinity contracts at issue.

87. The three Coinfinity contracts in question does not provide means for Coinfinity to terminate the agreement when Supplybit commits a material breach of the agreement.

88. The contracts also mandate a lengthy three year expiration period from the date of deployment. Coinfinity also signed Extended Agreements for each contract when Supplybit failed to perform under the contracts in 2022 further extending the expiration date, essentially trapping Coinfinity.

89. Under Illinois law, a material breach empowers the non-breaching party to terminate the contract. *Equal Employment Opportunity Commission v. North Knox School Corp*. 154 F.3d 744, 749 (7th Cir. 1998).

90. Supplybit's total suspension of mining services for the three Coinfinity contracts arising from the force majeure event and the Ohio water quality event constitutes a material breach of the said contracts. Supplybit has yet to resume mining and other services it promised to the plaintiff's under the contracts.

91. Coinfinity's CEO Shawn Keller spoke with Supplybit's CEO, Michael Groff, to explore ways to terminate the contracts. Keller was told that extension and amendments are the only options for Coinfinity and other Supplybit's customers.

92. In essence, there is no way for Coinfinity to terminate these contracts despites multiple and repeated breaches by Supplybit. Supplybit wants to lock in Coinfinity and other customers in a lifetime prison sentence.

93. Apparently contract law means nothing to Supplybit. It can fail to perform, but its customers cannot leave these contracts, and they must remain and suffer the consequences of Supplybit's breach.

94. As a result of the facts described in the foregoing paragraphs, an actual controversy of sufficient immediacy exists between the Parties as to whether the agreement terminated on June 15, 2023. The plaintiff seeks a judicial declaration that the contracts terminated on that date.

**Count VI**
**Violation of Illinois Consumer Fraud and Deceptive Business Act 815 ILCS 505/1**

95. The plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

96. Supplybit committed deceptive business acts by falsifying the reasons for suspending cryptocurrency mining services to the plaintiff under the three contracts.

97. Supplybit in making these false and misleading statements to the plaintiff, including but not limited to that Supplybit would provide full hash power within short time period; it would pay true-ups if it fails to meet hash power rate; the failure of Silicon Valley Bank prevented it from performing cryptomining services under the contracts; in order to restore services, a customer like Coinfinity must pay a fee and sign an extension, all intended to have the plaintiff rely on them so the plaintiff would not terminate its contracts with Supplybit.

98. Supplybit made these misleading statements and committed deceptive acts while in the course of conducting trade and commerce, while attempting to prevent the plaintiff from terminating its contracts, essentially locking the plaintiff into a lifetime commitment while it continues to fail about providing services provided under each contract.

99. Supplybit continues to offer cryptomining services to consumers despite telling the plaintiff in this case repeatedly that it had to suspend their mining services due to the Silicon Valley Bank failure.

100. Supplybit's deceptive practices affects and concern other Illinois consumers and those consumers beyond the state of Illinois.

101. The plaintiff suffered damages resulting from Supplybit's deceptive business conduct that is either directed toward the market or otherwise implicated consumer protection concerns.

## Count VII
### Recission of All Three Contracts (Alternative Count)

102. The plaintiff re-alleges and incorporate the preceding paragraphs as if fully set forth herein.

103. Under Illinois law, a party may seek rescission by alleging (1) substantial nonperformance or breach by the defendant, and (2) that the parties can be restored to the status quo. *Northwestern Mem. Hosp. v. Virtual Imaging, Inc.*, 2013 WL 6382988. (N.D. IL 2013).

104. Supplybit materially breached all three Coinfinity agreements in this suit by suspending mining services under the contracts without any justification.

105. The plaintiff can be restored to the status quo if the Court orders the return of the plaintiff's purchase price and monthly service fees paid under the separate contracts.

106. The plaintiff was told by Supplybit that these contracts could be sold or transferred to third parties. Prior to entering into the contracts with Supplybit, Shawn Keller was told by Michael Groff that the ability to sell and/or transfer the contracts was a major selling point. Coinfinity had listed these contracts for sale for several months and had to take them down due to lack of interest. This confirms that now no one wants these contracts as they worthless due to repeated breaches and unjustified suspensions of services.

107. The plaintiff respectfully requests that this Court enter a judgment rescinding the three mining services agreements and restoring the parties to their status prior to the execution of the mining services agreement.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, Coinfinity, LLC prays for the following judgment:

A. A judgment declaring that Supplybit is not entitled to rely on the failure of Silicon Valley Bank to trigger the force majeure clause;

B. A judgment declaring that Supplybit's total suspension of services from March 2023 force majeure event and the August 2023 Ohio water event constitute a material breach of the parties' three agreements;

C. A judgment declaring that the plaintiff as nonbreaching party, may terminate the agreements due to Supplybit's material breach as of June 15, 2023 if not earlier;

D. A judgment declaring that the parties' contracts are terminated on or about June 15, 2023 and plaintiff does not owe Supplybit any termination fees or other penalties;

E. A judgment that Supplybit materially breached the parties' contracts thereby excusing further performance by the plaintiff;

F. An award of damages for plaintiff as a result of Supplybit's material breach of the three contracts

G. An award of damages, including actual damages, statutory damages, attorneys' fees allowable under Illinois Consumer Fraud and Deceptive Business Act 815 ILCS 505/1.

H. Alternatively, the plaintiff respectfully requests that this Court enter a judgment rescinding the three mining services agreements and restoring the parties to their status prior to the execution of the mining services agreement.

Respectfully Submitted,

**COINFINITY, LLC**
Plaintiff,
By:__/s/ Gary Zhao_____
ATTORNEY FOR COINFINITY

Gary Zhao 6279527
Amundsen Davis LLC
150 North Michigan Avenue, Suite 3300
Chicago, Illinois 60601
Phone: (312) 455-3906
Fax: (312) 997-3431
gzhao@amunsendavislaw.com